# In the United States District Court
## for the Southern District of Georgia
## Waycross Division

| | | |
|---|---|---|
| JAMIE MCDANIEL, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| ROBERT SMITH; ALAN G. PAULK, | : | |
| JR.; ALAN G. PAULK, SR.; JACK | | |
| HARPER; TODD WINKLER; | : | |
| JOHN DOE 1; and JOHN DOES 2-5, | | |
| | : | |
| Defendants. | | NO. CV507-79 |

### ORDER

Plaintiff, Jamie McDaniel, filed the above-captioned case against Defendants, Robert Smith, former Coffee County Sheriff; Alan G. Paulk, Jr.; Alan G. Paulk, Sr.; Jack Harper; Todd Winkler, a Coffee County Deputy Sheriff; and John Does 1-5 (all unidentified Sheriff's Department employees), alleging federal constitutional claims pursuant to the Fourth, Fifth, and Fourteenth Amendments, and a number of related state law claims.

Presently before the Court are the amended motion to dismiss[1] and motion for summary judgment filed by Alan Paulk, Jr.[2]  Because Paulk has not carried his burden in demonstrating that service of the state court complaint in Coffee County was invalid, Paulk's summary judgment motion will be **DENIED**.  Because the Court concludes that Federal Rule of Civil Procedure 4(m) governs the timeliness of service as to this action, Paulk's amended motion to dismiss McDaniel's complaint will be **DENIED** in part.  Because McDaniel's complaint did not aver that Paulk, or any Defendant, was motivated by any class-based animosity, Paulk's amended motion to dismiss will be **GRANTED** as to McDaniel's § 1985 claim.  Because the Court concludes that McDaniel's complaint is inadequate in certain particulars with respect to his § 1983 claim, the Court will **GRANT** McDaniel leave to amend his complaint to cure these deficiencies.

---

[1] Paulk filed an amended motion to dismiss, without any substantive changes from the initial motion to dismiss, after Paulk's attorney gained pro hac vice admission to practice before the Court.

[2] Unless otherwise noted, all references to "Paulk" in this order refer to Alan Paulk, Jr., not his father, Alan Paulk, Sr.

**BACKGROUND**[3]

On St. Patrick's Day, March 17, 2004, McDaniel went to a bar in the Buckhead area of Atlanta, Georgia, with friends, Paulk and Chris Joiner.  Later that evening, McDaniel and Joiner were arrested by the Atlanta Police for public urination.  Paulk posted McDaniel's $1,700 bond and got Plaintiff released from jail.  Free at Last Bail Bonding Company required Paulk to sign the bond as the personal guarantor/indemnitor, and Paulk was later required to reimburse the bail bond company when McDaniel failed to appear in court to answer the charge against him.

Thereafter, Paulk called his father, Alan Paulk, Sr., in Coffee County, Georgia, and sought his father's assistance with regard to this alleged debt owed to him by McDaniel.  Paulk, Sr., called his friend, then-Coffee County Sheriff Robert Smith,[4] whom Paulk, Sr., supported politically.  Paulk, Sr., also contacted a business

---

[3] The Court will be required to weigh certain evidence regarding Paulk's residence to decide this motion, which, as explained herein, is the proper procedure under governing law, even though the jury usually decides questions of fact.  Otherwise, the Court will view the facts as stated in McDaniel's complaint as true for purposes of this motion.

[4] Smith resigned in March 2006 after criminal charges were brought against him by the Waycross Judicial Circuit District Attorney, Richard E. Currie, accusing Smith of malfeasance in office and related offenses.

associate, Jack Harper, who was also a Coffee County Reserve
Deputy Sheriff.  Paulk, Sr., requested that Harper apprehend
McDaniel, who was living and working in Flagler Beach,
Florida.  Harper was not a licensed bail recovery agent for
Free at Last Bonding Company, or any other entity.

Smith authorized Harper to take a marked patrol car to
apprehend McDaniel and bring him back to the Coffee County
Jail.  Harper traveled in the patrol car to Flagler Beach,
Florida, bearing a gun and a badge, where he seized McDaniel
from his workplace.  Without McDaniel's consent, Harper
forced McDaniel into the rear passenger seat of the patrol
car.  Harper drove McDaniel from Florida across the state
line into Georgia.  Harper delivered McDaniel to the Coffee
County Jail.  Plaintiff was not afforded extradition, or any
official process transferring him to Georgia to answer any
criminal charges.  McDaniel also asserts that he was not
shown an enforceable, outstanding warrant for his arrest.
According to Plaintiff, Florida law does not authorize bail
recovery in the fashion employed by Harper.

McDaniel's presence at the jail was not recorded by the
Coffee County Sheriff's Department, and he remained
imprisoned for more than seventy-two hours without ever

-4-

seeing a Magistrate Judge, or being informed of the charges against him.   Thereafter, Deputy Winkler transported McDaniel to Atlanta, but law enforcement officials at the City Jail there refused to take custody of McDaniel because there was no outstanding bench warrant for his arrest. Smith then advised Winkler to get back to work and let McDaniel go.   Winkler took McDaniel back to Coffee County, and after some time passed, McDaniel was released.

Upon McDaniel's return to Florida, Plaintiff learned that his boss had fired him based on the mistaken assumption that McDaniel had committed a grave criminal offense justifying his forcible apprehension by law enforcement agents.   McDaniel's landlord evicted him for the same reason.

On July 20, 2006, Plaintiff filed suit based on these underlying facts in the State Court of Cobb County, Georgia. McDaniel attempted to effect service on Paulk several times, at various locations.   First, Plaintiff attempted to serve Paulk at 4100 Paces Walk, Condominium 3202, Atlanta, Cobb County, Georgia.   Paulk is an attorney licensed by the State of Georgia and was admitted to the bar in 2002.[5]   The 2005-

---

[5] The complaint states that Paulk is a former assistant district attorney of Coffee County, Georgia.

2006 directory of the State Bar of Georgia listed 4100 Paces
Walk in Atlanta as his current address.  The state court
complaint alleged that Paulk lived at this address and that
he was a resident of Cobb County.  On October 4, 2006, the
Cobb County Sheriff registered a failure of service at the
Cobb County address on Paulk.

Thereafter, McDaniel hired James Purgason, a private
investigator and process server, to investigate Paulk's
whereabouts.  Purgason discovered that in 2006, Paulk had
changed his address with the State Bar to 476 McWilliams
Avenue, Atlanta, DeKalb County, Georgia.  On October 17,
2006, Purgason attempted to serve Paulk at the DeKalb County
address.  Purgason did not approach the door to the house,
but determined that a black Toyota 4Runner parked in the
driveway was registered to Paulk.

When Paulk emerged from the residence, Purgason made
eye contact with him and stated, "Mr. Paulk, I have service
for you."  Dkt. No. 60, Ex. 4, Purgason Aff. ¶ 6.[6]  Paulk
went back inside, closed the door, and refused to come out
of the house to accept service.  Purgason waited from 7:40
p.m. until 11:30 p.m. before leaving.

---

[6] Purgason later received a photograph of Paulk and confirmed that the
man he spoke to was Paulk.  Dkt. No. 60, Ex. 4, Purgason Aff. ¶ 7.

Purgason returned to the DeKalb County address on October 18, October 21, October 24, October 26, November 1, November 2, November 19, December 1, December 23, and December 27, but was unable to serve Paulk.  "Paulk did not appear to be at the residence, and no one answered the door."  Dkt. No. 60, Ex. 4, Purgason Aff. ¶ 9.

Meanwhile, on December 15, 2006, a deputy sheriff from Coffee County left the complaint and summons with Paulk's father, at the home owned by Paulk, Sr., at 240 Alan Drive, in Douglas, Georgia, and entered service on Paulk, Jr.

In Paulk's answer to the state court complaint, Paulk denied venue in Cobb County and the sufficiency of service of process.  On January 28, 2007, Purgason went to the DeKalb County address and knocked on the door.  Paulk answered and identified himself, and Purgason personally served him with the complaint and summons.  On or about March 23, 2007, Plaintiff amended his complaint to add federal claims.  Within a week, Plaintiff dismissed the state court action voluntarily.  On September 25, 2007, Plaintiff filed this action in federal court, pursuant to the Georgia renewal statute, codified at Georgia Code

-7-

section 9-2-61.  On October 11, 2007, McDaniel served Paulk in this action.

Paulk's summary judgment motion contests the validity of service in the state court action, and his motion to dismiss challenges the timeliness of service in this action. Further, Paulk has also moved to dismiss McDaniel's § 1983 and § 1985 claims.

## DISCUSSION

McDaniel's eighteen count federal court complaint asserts a number of federal and state law causes of action. Counts one and two allege that Smith and Harper violated McDaniel's due process rights, respectively.  Counts three and four assert Fourth Amendment claims against Harper and Smith, respectively.  The fifth count asserts that Smith has supervisory liability for the wrongs committed against McDaniel.

Count six posits that Smith had a policy, practice, or custom of violating the Fourth Amendment and the Constitution's due process guarantees.  Count seven alleges that all Defendants engaged in a conspiracy to violate Plaintiff's rights, creating liability under 42 U.S.C.

-8-

§ 1983.  Likewise, count eight avers that all Defendants
engaged in a conspiracy under 42 U.S.C. § 1985 to violate
Plaintiff's rights.  The ninth count asserts that all
Defendants violated the Fair Debt Collection Practices Act.[7]

Counts ten to fifteen allege that one or more
Defendants committed certain state law torts against
Plaintiff, including false arrest, wrongful imprisonment,
assault and battery, invasion of privacy, intentional
infliction of emotional distress, breach of legal duty, and
negligence per se.  Count sixteen avers that Harper,
Winkler, and Does 1-5 acted as agents of the Paulks and
Smith, and that the Paulks and Smith are responsible for
their conduct under the respondeat superior doctrine.
Counts seventeen and eighteen seek attorneys' fees and
costs, and punitive damages, respectively.


**I.   Paulk's Summary Judgment Motion**

Paulk's motion for summary judgment contests the
validity of service in the state court action.[8]  Paulk urges

---

[7] McDaniel has abandoned this claim, conceding that it was not brought
within the one year statute of limitations provided in 15 U.S.C. §
1692k(d).  Dkt. No. 34 at 8.

[8] While Paulk did not address the validity and effect of the December
15th service of process in his initial brief in support of his motion
for summary judgment, his failure to do so was reasonable.  First, the
parties agree that McDaniel attempted to effect service on Paulk the
following month, which indicated that McDaniel may have believed that

that the renewal action is barred by Georgia law because
McDaniel failed to effect valid service on Paulk in the
state court action before McDaniel dismissed that action
without prejudice.[9]  Georgia's renewal statute provides:

> When any case has been commenced in either a state
> or federal court within the applicable statute of
> limitations and the plaintiff discontinues or
> dismisses the same, it may be recommenced in a
> court of this state or in a federal court either
> within the original applicable period of
> limitations or within six months after the
> discontinuance or dismissal, whichever is later,
> subject to the requirement of payment of costs in
> the original action as required by subsection (d)
> of Code Section 9-11-41[.]

Ga. Code Ann. § 9-2-61.


## A. Standard of Review

Federal Rule of Civil Procedure 56© provides for

---

the service in December was not effective.  Second, according to
Paulk, and not disputed by McDaniel, McDaniel dismissed the state
court case voluntarily on the eve of a hearing regarding Paulk's
motion to dismiss that case for improper venue and insufficient
service.  Third, Paulk also posits that McDaniel did not rely on the
December 15th service in the original suit.
       The Court also rejects McDaniel's argument that Paulk waived
insufficiency of service of process as a defense to the original
action.  McDaniel insists that a defense on this ground should have
been raised in the answer, or in the original motion to dismiss filed
in state court or in this Court.  The Court notes that Paulk raised
insufficiency of service of process as a defense in the original
action.  Dkt. No. 60, Ex. 7 at 2.  In any event, it is appropriate for
Paulk to raise this issue here.  E.g., Campbell v. Coats, 254 Ga. App.
57, 59 (2002).

[9] McDaniel did serve Paulk in January 2007, but the process server's
state court authorization to do so had expired when that service
occurred; the parties agree that this service was a nullity.

summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Facts are "material" if they could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

Paulk asserts that the Court should enter summary judgment in his favor because the Sheriff's return of service in the state court suit was ineffective.[10]  Under Georgia law, "[w]hen a defendant in a lawsuit challenges the

---

[10] Although this action is now in federal court, it is appropriate to look to state law to determine the sufficiency of the service of process in the state court action.  "A federal court may consider the sufficiency of process after removal and does so by looking to the state law governing process." <u>Usatorres v. Marina Mercante Nicaraguenses, S.A.</u>, 768 F.2d 1285, 1286 (11th Cir. 1985); <u>see also</u> <u>Ritts v. Dealers Alliance Credit Corp.</u>, 989 F. Supp. 1475, 1477-78 (N.D. Ga. 1997).

sufficiency of service, that defendant bears the burden of showing improper service." Franchell v. Clark, 241 Ga. App. 128, 130 (1999). Moreover, Defendant's burden is a heavy one. "The return can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit." Yelle v. U.S. Suburban Press, 216 Ga. App. 46, 47 (1995).

When conflicting evidence is presented regarding the sufficiency of service, the issue is a question of fact to be resolved by the trial court. Unless the trial court abuses its discretion, its findings regarding the sufficiency of service of process "will not be disturbed on appellate review when supported by any evidence." Duke v. Buice, 249 Ga. App. 164, 166 (2001).

## B. The Georgia Renewal Statute

Georgia's renewal statute provides that "the statute of limitations is satisfied if a plaintiff files a valid action within the limitations period, that action is later dismissed, and the plaintiff files a new action (that would otherwise be time-barred) within six months of the dismissal." Scott v. Muscogee County, 949 F.2d 1122, 1123

-12-

(11th Cir. 1992)(per curiam)(emphasis added).  Paulk
declares that the claims against him cannot be renewed
because Plaintiff failed to effect proper service in the
original action, making that case void and incapable of
renewal.

Where Congress fails to specify a limitations period
for a federally-created statutory right, the courts often
"borrow" an analogous statute of limitations from state law.
Section 1983 causes of action are controlled by the personal
injury tort claims limitations period under the law of the
state in which the district court sits.  <u>Wilson v. Garcia</u>,
471 U.S. 261, 276–79 (1985).  "[T]his 'borrowing' logically
include[s] rules of tolling[,]" unless the tolling provision
is inconsistent with federal law.  <u>Bd. of Regents v.
Tomanio</u>, 446 U.S. 478, 485–86 (1980).  The Georgia renewal
statute applies to § 1983 actions in federal court.  <u>Scott</u>,
949 F.2d at 1123.

"It is well settled in Georgia law that in order for a
case to qualify as a renewal action, the earlier filed suit
must have been a valid action <u>with proper service on the
defendant</u>."  <u>Black v. Knight</u>, 231 Ga. App. 820, 821 (1998).
Where service is not perfected in the original suit, a

-13-

plaintiff cannot dismiss his action voluntarily and renew it after the statute of limitations expires.  Stephens v. Shields, 271 Ga. App. 141, 142 (2004).

The parties dispute whether the December 15, 2006, service was valid.  On that date, Coffee County Deputy Sheriff Perkins left the summons and complaint with Paulk's father at the residence owned by Paulk, Sr.  Under Georgia law, "substituted service" is made by having the sheriff or his deputy deliver a copy of the complaint and summons to the defendant's dwelling or usual place of abode, and by leaving the papers with a person of suitable age and discretion residing therein.  Ga. Code Ann. § 9-11-4(e)(7).

Paulk argues that this service was not valid, because his residence at the time was at the DeKalb County address. McDaniel contends that Paulk had moved to his father's address in Coffee County and was living there when the papers were served.  The Court must determine whether 240 Alan Drive, in Douglas, Georgia, was Paulk's "dwelling house or usual place of abode" at the time of service.

## C. Evidence of Paulk's Residence

It is undisputed that Paulk changed his residence

-14-

several times between 2000 and 2007.  Paulk testified at his
deposition:

> I live at 476 McWilliams Avenue. . . . [Prior to
> that] I lived in Douglas . . . [w]ith my father
> [at 240 Alan Drive].  [Prior to that] [t]here was
> another address in Douglas I lived at, and I can't
> remember it. . . .  It was on Bay Meadows
> Drive. . . .  Before that will be 371 East Paces
> Ferry, back up here in Atlanta, which is on my
> driver's license, I think. . . .  [Prior to that]
> 374 East Paces Ferry. . . .  Prior to that it was
> back in Douglas [at 240 Alan Drive]. . . .
> There's – you know what, I've left something
> out. . . .  I also lived at my – at the condo on
> Paces Walk, 4100 East. . . .  That was – that's
> since law school [in 2000].

Dkt. No. 115, Paulk Dep. at 7-9 (March 3, 2008).

In support of McDaniel's argument that Paulk lived in
Coffee County on December 15, 2006, Plaintiff has presented
evidence that Paulk transferred his mail from the Cobb
County address to Coffee County on July 10, 2006.  The
change of address form states that the move was not
temporary.  Dkt. No. 60, Ex. 3.  As of March 25, 2008, Paulk
was still receiving mail there.  Dkt. No. 60, Ex. 10.  In
addition, Paulk's Toyota 4Runner and BMW motorcycle were
registered at the Coffee County address at the time of
service.

Plaintiff also relies on statements made by Paulk at
his deposition to establish the propriety of service:

-15-

```
Q    And as for your permanent residence, is that
     476 McWilliams Avenue [in DeKalb County]?
A    At this time, yes.
Q    And at any point in time since the lawsuit was
     filed initially against you, have you ever
     moved to or moved and declared any residence
     in Coffee County as your permanent
     residence? . . .  That would be [since] July
     of '06.
A    You know, I stayed some time at my dad's house
     and had the idea of going back to Douglas at
     some point between then and now.  And I've got
     my house – I had my house up for sale, so, you
     know, there was a time when I split my time
     between Douglas and Atlanta.  I don't know
     when that was exactly, but it was – I'm sure
     it was since that long ago, you know. . . .
     I've owned that house [in DeKalb County] the
     whole time. . . .  But there was a time when I
     strongly considered moving everything to
     Douglas, and I moved to Douglas, not
     everything I owned, but I stayed with my dad.
```

Dkt. No. 115, Paulk Dep. at 13-14 (emphasis added).

Plaintiff has also shown that – after Paulk evaded
service on October 17, 2006 – the process server went to
Defendant's house in DeKalb County nine times between
October 21 and December 27, and "Paulk did not appear to be
at the residence, and no one answered the door."  Dkt. No.
60, Ex. 4, Purgason Aff. ¶ 9.

To the contrary, Paulk has provided the following
evidence:  (1) an affidavit in which Paulk states that he
lived in DeKalb County, not Coffee County, in December 2006
and that he had no intention of returning to his father's

-16-

residence; (2) an affidavit from Alan Paulk, Sr., stating that his son did not live with him in December 2006; (3) Paulk's 2006 federal and state tax returns listing his address in DeKalb County; (4) a bank record from December 14, 2006, showing Paulk's address in DeKalb County; (5) an airplane ticket booked via the internet on December 31, 2006 showing his address in DeKalb County; (6) a prescription drug order from drugstore.com on December 23, 2006, listing his shipping and billing address in DeKalb County; (7) an order from amazon.com on November 20, 2006, listing his shipping and billing address in DeKalb County; (8) a power company record showing electricity service at Paulk's residence in DeKalb County during December 2006. Dkt. No. 64, Exs. 1 (A-H) & 2.

Paulk contends that the fact that he receives mail in Coffee County does not establish his residency there, citing Duke v. Buice. In Duke, the defendant asserted that she used her mother's address for mail, although she actually lived with her father, because her father moved around a lot. The court found this explanation credible. 249 Ga. App. at 167-68. The Duke court also found that there was no evidence in the case that undermined the defendant's

statements that she did not live at her mother's house when process was left with her stepfather at her mother's address.  Id. at 168 & 164.  While the Court agrees that the mere fact that Paulk receives mail in Coffee County is not necessarily dispositive, here, other evidence also supports McDaniel's assertion that Paulk resided in Coffee County at the time of service.  Accordingly, Duke is not controlling.

Even if Paulk traveled to and from Atlanta, spent several nights a week there, and conducted a business there, that does not mandate that his residence was in Atlanta. Lance v. Safwat, 170 Ga. App. 694, 695 (1984).  "Where a party maintains a residence with a member of his family, but travels about or lives at various other places, the permanent residence may, on the facts, be his usual place of abode."  Tolbert v. Murrell, 253 Ga. 566, 567 (1984)(quoting 2 James Wm. Moore et al., Moore's Federal Practice ¶ 4.11[2]).

Paulk also points out that the "notorious" box was not checked on the entry of service form filled out by the Deputy Sheriff, and that portion of the form was left blank. Instead, the entry of service form noted that service had been made on a "corporation" by leaving Paulk's service copy

-18-

with his father.  As a result, Paulk argues that the entry
does not indicate that the papers were left at the residence
of the defendant or that notorious service was effected.
Kidd v. First Commerce Bank, 264 Ga. App. 536, 537 (2003)
(upholding trial court's determination that corporate
service was not effected where the return indicated personal
service on the presidents of the corporations); All Risk
Ins. Agency, Inc. v. Rockbridge Sanitation Co., 171 Ga. App.
357, 357-58 (1984); but see Todd's Constr. Co. v. Trusco
Leasing, Inc., 140 Ga. App. 452, 453 (1976)(testimony by a
deputy sheriff that he personally served a company's
president was sufficient evidence of valid service on both
the corporation and the president).

     The Court disagrees that service was rendered
ineffective for the reasons set forth by Defendant.  It is
beyond dispute that the Deputy Sheriff made a mistake in
filling out the return of service form.  According to the
form, Deputy Perkins effected service on "the defendant Alan
Paulk Jr. a corporation by leaving a copy of the within
action and summons with Alan Paulk Sr. in charge of the
office and place of doing business of said Corporation in
this County."  Dkt. No. 60, Ex. 6.

-19-

Paulk is not a corporation, and McDaniel was not attempting to file a suit against any business run by Paulk. Kidd does not control the result here. There, the return indicated that the president of a company had been personally served. On the face of it, there is nothing odd about that. A person can be sued as well as the corporation that she runs, and personal service on the company officer does not necessarily indicate that the company has been served as well. Indeed, that is exactly what transpired in Kidd, where the plaintiffs sued two companies and their respective presidents. Personal service was made on the presidents of the companies, and it is not surprising that such service was not effective as corporate service on the companies as well. 264 Ga. App. at 536-37.

In contrast, the events in the instant case could not have been legally effective as the form described the service. Obviously, in the instant case, the Deputy Sheriff checked the wrong box. As a result, neither Kidd nor All Risk Insurance inform the Court's analysis. See All Risk Ins., 171 Ga. App. at 358 (distinguishing between cases where a corporation is the sole defendant, and those cases where a corporation and corporate officer are sued, but only

-20-

one is served).  The defect in the entry of service form is not sufficient to render the service ineffective and void as a matter of law.

> Compliance with OCGA § 9-11-4(e)(7) by constructive/substitute service means what it says, i.e., that the defendant receive actual notice of the action after service upon a person who resides at the defendant's place of abode. . . .  It is for the trial judge to decide weight and credibility where there exists a dispute as to evidence of defendant's usual place of abode.

Focus Healthcare Med. Ctr., Inc. v. O'Neal, 253 Ga. App. 298, 303 (2002).

There is conflicting evidence regarding Paulk's residence at the time service was made on December 15, 2006. The Court concludes that Paulk has failed to discharge his heavy burden to justify setting aside the Sheriff's return of that date.  Accordingly, the renewal action is not barred.  The Georgia statute tolls the statute of limitations where service is made in the first suit, so long as the service was voidable, and not void.  Clark v. Dennis, 240 Ga. App. 512, 512 (1999); Campbell, 254 Ga. App. at 57-59.

-21-

## II. <u>Paulk's Amended Motion to Dismiss</u>

It is undisputed that McDaniel failed to serve Paulk with the complaint in this case within six months of dismissing the Cobb County case.  Arguing that service past that date was untimely, Paulk contends that the whole case should be dismissed.

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a complaint based on insufficient service of process, which is an objection to the manner or method of service.  A defendant may object to service of process under Rule 12(b)(5) on the grounds that service was untimely.  <u>E.g.</u>, <u>Greene v. Wright</u>, 389 F. Supp. 2d 416, 426 n.2 (D. Conn. 2005); <u>Maxwell v. Nat'l Gypsum Co.</u>, 3:03-CV-66, 2003 U.S. Dist. LEXIS 7367 (W.D.N.C. Apr. 2, 2003).

Paulk has also moved to dismiss McDaniel's § 1983 and § 1985 claims pursuant to Rule 12(b)(6).  Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint.  In essence, the movant says,

-22-

"even if everything you allege is true, the law affords you no relief."

Consequently, in determining the merits of a Rule 12(b)(6) motion, a court must assume that all of the factual allegations of the complaint are true, e.g., <u>United States v. Gaubert</u>, 499 U.S. 315, 327 (1991), and construe the averments in the light most favorable to the plaintiff, e.g., <u>Sofarelli v. Pinellas County</u>, 931 F.2d 718, 721 (11th Cir. 1991). However, "a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (internal citation omitted). Rather, the contentions contained in the complaint must "plausibly suggest," and "not merely be consistent with" a recognized cause of action under the governing law. <u>Id.</u> at 1966; <u>see Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d 955, 974 n.43 (11th Cir. 2008).

**A. The Timeliness of Service in this Action**

Paulk contends that McDaniel's complaint should be dismissed because Plaintiff failed to effect timely service in the instant case.  On March 26, 2007, Plaintiff dismissed the state court action voluntarily.  Pursuant to Georgia Code section 9-2-61, McDaniel had six months to renew the action.  McDaniel refiled the action in federal court on September 25, 2007, and served Paulk on October 11, 2007.

Paulk argues that service of process must be made pursuant to Georgia Code section 9-11-4 in actions renewed pursuant to section 9-2-61 in federal courts.  Morris v. Haren, 52 F.3d 947, 949 (11th Cir. 1995)(per curiam).  According to Defendant, Georgia's state courts dismiss renewal actions often where plaintiffs are guilty of laches and fail to serve defendants within the six-month renewal period under Georgia Code section 9-2-61.  Davis v. Bushnell, 245 Ga. App. 221, 222 (2000).  McDaniel rejoins that the state law service requirement set out at section 9-11-4(c), which generally provides for a 5 day service of process window, does not apply here.  Rather, according to McDaniel, Federal Rule of Civil Procedure 4(m) governs, and gives a plaintiff 120 days to serve a defendant.

McDaniel asserts that the Court has federal question jurisdiction over the case.  Plaintiff submits that Morris is not binding because that per curiam decision failed to reach the merits of the question, and only assumed that the state rule applied.  Instead of Morris, Plaintiff relies on Tillman v. Georgia, 466 F. Supp. 2d 1311 (S.D. Ga. 2006), to support his position.  McDaniel notes that Tillman upheld service under the Federal Rules, after engaging in an analysis of which law governed, state or federal, pursuant to Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  466 F. Supp. 2d at 1317-23.  Paulk rejoins that Tillman did not involve an action dismissed and renewed pursuant to Georgia Code section 9-2-61.  Paulk urges the Court to apply Georgia's service requirement because the application of Federal Rule 4 would vitiate the state law.

McDaniel maintains that Tillman does apply, even though it is not a renewal case.  The issue is the same there as here; in both cases, there is an obvious conflict between the state and the federal rules of service.  Tillman followed the federal rule, and rejected Morris as non-binding.  Tillman, 466 F. Supp. 2d at 1317 n.5.  As Tillman noted, the Morris court did not attempt to resolve the

-25-

conflict, it just assumed the state rule governed.  Indeed, Morris was primarily concerned with when the six-month renewal period began, i.e., when counsel announced he was abandoning the case or when he actually filed the dismissal. 52 F.3d at 949.

Plaintiff's position is that federal procedural rules trump state procedural rules when a federal question case is in federal court.  The present case is founded on federal question jurisdiction, not diversity of citizenship.  To apply the state procedural rule in this context would create great confusion and unpredictability for litigants.  The Court concurs with Plaintiff and the Tillman court that Morris is not binding precedent, but does not agree that it is either necessary or appropriate to undertake an Erie analysis in a case of this nature, that is, a case founded on federal question jurisdiction.

Defendant urges the Court to look toward Morris and other decisions that are consistent with Morris, like Johnson v. American Meter Co., 412 F. Supp. 2d 1260 (N.D. Ga. 2004), and Cambridge Mutual Fire Insurance Co. v. City of Claxton, 720 F.2d 1230 (11th Cir. 1983).  Those courts found that the requirements of Georgia Code section 9-11-4

-26-

are an "integral part of the state statute of limitations" because, under Georgia law, an action is not commenced until service is effected.  <u>Johnson</u>, 412 F. Supp. 2d at 1263; <u>Cambridge</u>, 720 F.2d at 1233.  Significantly, <u>Johnson</u> and <u>Cambridge</u> were diversity cases.  For that reason, neither informs the Court's judgment in this matter.

Paulk notes that most of McDaniel's claims against him are state law causes of action, and that this case would be barred under state law had it been filed in state court. Thus, the state law claims should not be able to proceed to judgment simply because of the fortuity that federal claims were asserted as well.  However, whether federal or state claims make up the predominate share of the claims asserted in the lawsuit is beside the point.  Rather, the relevant question is whether the Court's federal question jurisdiction or diversity jurisdiction is invoked.[11]

---

[11] <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740 (1980), is not to the contrary.  There, the Court explained that in a <u>diversity</u> case, a state tolling statute applied to bar a claim that was filed within the statute of limitations, but not served until more than sixty days later.  Notwithstanding Federal Rule of Civil Procedure 3, under which service would have been timely, the state law was an integral part of the statute of limitations, and controlled the case.  <u>Id.</u> at 748-49.
     The <u>Walker</u> Court noted that

There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the

-27-

Erie and its progeny have no application to cases where the Court's subject matter jurisdiction is founded on federal question jurisdiction, even when there are additional state law causes of action appended thereto by way of the Court's supplemental jurisdiction under 28 U.S.C. § 1367. West v. CONRAIL, 481 U.S. 35, 39 & n.4 (1987) ("Respect for the State's substantive decision that actual service is a component of the policies underlying the statute of limitations requires that the service rule in a diversity suit 'be considered part and parcel of the statute of limitations.' . . . This requirement, naturally, does not apply to federal-question cases."); Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1056 (2008).

As Paulk suggests, federal courts have jurisdiction to hear a number of different kinds of cases.  The federal courts have federal question jurisdiction over cases that raise claims under federal statutes only, pursuant to 28

---

litigants.  The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and Erie and its progeny do not permit it.

Id. at 752.  Here, though, the action is based on federal question jurisdiction.  Service is governed by Rule 4(m).

-28-

U.S.C. § 1331.  The federal courts also hear cases raising only state law claims, based on the diversity of citizenship of the parties, under § 1332.  Further, the federal courts have jurisdiction over "hybrid" actions, where a pendent state law claim is brought along with a federal question claim in federal court, pursuant to § 1331 and § 1367.[12]

Presumably, Paulk would not contest that, in a case involving only federal question claims, Georgia's service requirement would not apply.  However, Paulk takes the view that the Court should engage in an <u>Erie</u> analysis as to the supplemental state law claims in a case brought to federal court via a related federal question cause of action.  In the instant case, Paulk asserts that the state law should control because it is an integral part of state substantive law.

The Court is not convinced that such a result is mandated by the Rules of Decision Act, 28 U.S.C. § 1652,

---

[12] The federal courts also have the power to hear other types of hybrid actions, not relevant here, wherein an ancillary claim is raised in a case founded on diversity of citizenship, pursuant to § 1332 and § 1367.  The doctrines of pendent and ancillary jurisdiction have been codified by Congress in the supplemental jurisdiction statute, 28 U.S.C. § 1367.  <u>See</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966)(under the pendent jurisdiction doctrine, district courts are empowered to hear non-federal claims when they arise from the same nucleus of operative facts as a federal claim that was brought before the court by virtue of the court's original jurisdiction); <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 373-77 (1978)(describing ancillary jurisdiction).

which provides that state law governs in federal court in
cases where the state law applies.  Paulk's argument would
have the Court adopt the view that the state law service
requirement applies to § 1367 supplemental jurisdiction,
state law claims related to the § 1331 federal question
claims otherwise before the Court.  In the Court's view, §
1652 does not require, or suggest, such a result.

        Because the federal courts are courts of limited
jurisdiction, cases may come to federal court only by virtue
of its original jurisdiction under § 1331 or § 1332.  Erie
and its progeny are implicated only in the latter, diversity
cases.  E.g., Walker, 446 U.S. at 752 ("whether state or
federal law should apply on various issues arising in an
action based on state law which has been brought in federal
court under diversity of citizenship jurisdiction has
troubled this Court for many years.")(emphasis added).  The
fact that the Court may have supplemental jurisdiction over
related state law claims does not alter the analysis.

        Nor is the Court compelled to accept Paulk's argument
by the Eleventh Circuit's decision in Jackson v. BellSouth
Telecommunications.  The Jackson court stated, without
analysis, that "we are Erie-bound to apply Florida law in

-30-

evaluating the plaintiffs' supplemental state-law claims."
372 F.3d 1250, 1274-75 (11th Cir. 2004).  However, <u>Jackson</u>
was applying a point of Florida law that is more aptly
characterized as substantive, a litigation privilege for
acts occurring during judicial proceedings, to pendant
Florida law claims for tortious interference and fraud.  <u>Id.</u>
at 1275.  <u>Jackson</u> does not stand for the proposition that a
federal court should look to state law to determine when a
federal complaint containing federal causes of action must
be served, when a federal rule directly on point gives the
plaintiff 120 days to complete this task.

The Court is not persuaded to the contrary by the sole
case relied on by Paulk, <u>Neill v. Gulf Stream Coach, Inc.</u>,
wherein the court opined, without any elaboration, that
"<u>Erie</u>'s command applies with equal force to state claims
brought within the court's subject matter jurisdiction by
the presence of a federal claim in the civil action."  966
F. Supp. 1149, 1152 n.4 (M.D. Fla. 1997).  The Court
concludes that Paulk's argument is inconsistent with
controlling Supreme Court authority, which properly limit
the application of <u>Erie</u> and its progeny to diversity cases.

**B. Constitutional Claims Against Paulk**

I. § 1983 Conspiracy Liability

To establish liability for a constitutional claim under § 1983, a plaintiff must prove "state action," or conduct that is "fairly attributable to the State." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 936-37 (1982). Two requirements must be met to demonstrate "fair attribution."

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

<u>Id.</u> at 937.

Paulk maintains that he was not a state actor. "Only in rare circumstances can a private party be viewed as a 'State actor' for section 1983 purposes." <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992). McDaniel urges that Paulk may have liability under § 1983 pursuant to the "public function" test, because Paulk performed a function

-32-

that is "traditionally the exclusive prerogative of the state." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003)(quoted source omitted).

As Paulk notes, the Harvey court stated that arrest and detention are not exclusively reserved to government authorities. In Harvey, a woman was involuntarily committed under Georgia law as mentally ill and a danger to herself and others. 949 F.2d at 1131. The Harvey court concluded that a physician was not a state actor where he commits a patient involuntarily, even though this action was taken pursuant to a state law. Id. at 1129. In rejecting the plaintiff's § 1983 conspiracy claim, the Eleventh Circuit noted that none of the defendants in the case were employed by the government. Id. at 1129 n.1 & 1130.

Likewise, Paulk submits that shopkeepers, bail bondsmen, and security guards may also arrest and detain others in appropriate circumstances without becoming state actors. See White v. Scrivner Corp., 594 F.2d 140, 142 (5th Cir. 1979)(describing the "shopkeeper's privilege" to arrest and temporarily detain suspected shoplifters). Relatedly, whether a bail bondsman qualifies as a state actor often

-33-

turns on whether he has enlisted the help of law enforcement in arresting the fugitive.  Landry v. A-Able Bail Bonding, Inc., 75 F.3d 200, 204 n.3 (5th Cir. 1996)(collecting cases).  Similarly, whether a bounty hunter is a state actor depends on the facts and circumstances of the case.  Jaffe v. Smith, 825 F.2d 304, 307-08 (11th Cir. 1987); see also McCoy v. Johnson, 176 F.R.D. 676, 679-80 (N.D. Ga. 1997).

However, it does not follow from these precepts that every arrest and detention by a private citizen is lawful, or that § 1983 liability can never attach to the conduct of a private citizen when he conspires with others to arrest and detain another person.  Nor does it necessarily follow that the circumstances that occurred in this case can be appropriately characterized as a mere arrest and temporary detention.  Instead, McDaniel asserts that he was incarcerated at the Coffee County Jail for three days and held incommunicado.  McDaniel alleges that this was done without any lawful authority, and was done either maliciously or with gross recklessness by the conspirators.

Where there is a concerted plan to detain an individual by law enforcement and a private citizen, based solely on the private citizen's say-so, then the private actor engaged

in such a conspiracy acts under color of state law.  White, 594 F.2d at 143 (citing Duriso v. K-Mart, 559 F.2d 1274 (5th Cir. 1977); Smith v. Brookshire Brothers, 519 F.2d 93 (5th Cir. 1975)).  Unlike White, here there is no evidence, or even suggestion, that Coffee County law enforcement authorities conducted any independent investigation into whether there was a valid reason for McDaniel's arrest and detention, such as an active bench warrant for his arrest. Rather, McDaniel contends that there was a preexisting plan between Defendants, some of whom were law enforcement officers, to detain Plaintiff.

There is no authority for the proposition that a private person has the authority to order the detention of another citizen in the county jail.  Much less does a private person have the power to have a citizen detained in a jail without (a) being processed into the system, (b) being allowed to contact an attorney, or (c) being apprised of the reason for the incarceration.  It is well-established in Anglo-American law that the imprisonment of those accused of committing a crime must be based on legal authority.[13]

---

[13] Compare with Boumediene v. Bush, 128 S. Ct. 2229 (2008), and Rasul v. Bush, 542 U.S. 466 (2004)(discussing the legally contentious detention of alleged enemy combatants - who had not been charged with a crime - in Guantanamo Bay, Cuba; concluding that the detainees possess the right to habeas corpus in the federal civilian courts to

If true, McDaniel's allegations may establish a situation more extreme than that presented in typical cases of arrest and detention by a shopkeeper, bail bondsman, physician, or security guard.  "To act 'under color of' state law for § 1983 purposes does not require that the Defendant be an officer of the State.  It is enough that he is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)(quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970)).  The Court rejects Paulk's argument that he cannot be liable for conspiracy simply because Paulk did not carry out the alleged wrongful conduct himself.  If Paulk conspired with state actors, he may be liable as a state actor, even though he is a private citizen.

Paulk also asserts that McDaniel's conspiracy allegations are insufficient.  Paulk argues that the bare averment of a conspiracy, without supporting operative facts establishing an agreement between defendants and a common plan to put the agreement into action, does not suffice to state a cause of action under § 1983.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984).  According to Paulk, McDaniel failed to set forth operative facts showing that

challenge the propriety of their detention).

-36-

Paulk had entered into a common plan with others to violate McDaniel's rights.  At most, Defendant argues, the complaint merely strings together discrete steps without showing contacts between the private and state actors to violate plaintiff's rights.  <u>Harvey</u>, 949 F.2d at 1133.

In considering this objection to McDaniel's complaint, the Court is cognizant that it is difficult to obtain direct evidence of unlawful conspiracies, and that it is rare that such evidence is uncovered in a civil conspiracy case. Instead, usually, "[a]cts indicate the intention [to conspire]."  <u>Odum v. Rayonier, Inc.</u>, No. 06-16251, 2008 U.S. App. LEXIS 16884 at *6 (11th Cir. Aug. 7, 2008).

The Court agrees with Paulk that McDaniel's complaint is insufficient to show the contacts between the parties that plausibly suggest that the respective private and state actors "reached an understanding" to violate McDaniel's rights.  <u>Harvey</u>, 949 F.2d 1133.  McDaniel's allegations leave critical gaps missing in Defendants' alleged unlawful conspiracy.  Based on the complaint, it is conceivable that Paulk did not play a part in the abduction or conspiracy, and that he merely reported a personal problem to his father, and the situation then spiraled out of control

-37-

without his further involvement.  McDaniel's allegations do
not explicitly aver that Paulk put the conspiracy into
motion, or that Paulk was the impetus behind McDaniel's
abduction and incarceration.  The Court is unwilling to
presume as much, or fill in such gaps by way of judicial
assumption.  Rather, McDaniel must plead such facts for his
§ 1983 claim to survive dismissal.  Id.

According to the complaint, Paulk was a former
Assistant District Attorney in Coffee County.  McDaniel's
complaint does not inform the Court of the significance of
this fact.  Perhaps the Court is supposed to infer that this
work history gave Paulk influence with law enforcement
officials in Coffee County, but McDaniel never says as much.
Similarly, McDaniel implies, but does not state, that Paulk
and his father traded on their political clout, patronage,
and friendship with Smith and Harper, to have the men use
the resources and agents at their disposal, to abduct
McDaniel from Florida and hold him in an irregular and
unlawful manner in the Coffee County Jail.

In short, the allegations in McDaniel's complaint leave
open the possibility that Paulk had nothing to do with the
unlawful conspiracy.  McDaniel's briefs assert that Paulk

-38-

was the impetus behind the conspiracy, but that is not an adequate substitute for actual averments in the complaint. To constitute a sufficient complaint, McDaniel would have to make plain that Paulk did not just ask law enforcement to go and do their jobs, or just report a troubling personal incident to his father.

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave [to amend a complaint] when justice so requires." The Court will permit McDaniel leave to amend his complaint to correct this pleading deficiency with respect his § 1983 allegations.


ii. McDaniel's § 1985 Claim

McDaniel has clarified that his § 1985 claim is made under paragraph (3) of the statute.  Paulk argues this claim must be dismissed because there was no race-based, or otherwise class-based, invidious discrimination in this matter.  Griffin v. Breckenridge, 403 U.S. 88, 101 (1971).

> For, though the supporters of the legislation
> insisted on coverage of private conspiracies, they
> were equally emphatic that they did not believe,
> in the words of Representative Cook, "that
> Congress has a right to punish an assault and
> battery when committed by two or more persons
> within a State." . . .  The constitutional shoals
> that would lie in the path of interpreting § 1985

-39-

> (3) as a general federal tort law can be avoided
> by giving full effect to the congressional purpose
> -- by requiring, as an element of the cause of
> action, the kind of invidiously discriminatory
> motivation stressed by the sponsors of the
> limiting amendment.

Id. at 101-02 (internal quotation omitted).

"The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." Id. at 102. The conspiracy alleged in the complaint posits that the action was taken against McDaniel to secure a private debt, not because the purported conspirators had an axe to grind with out-of-staters, as McDaniel has asserted for the first time in his opposition papers. Moreover, Plaintiff's complaint does not imply or suggest as much.

Assuming, arguendo, that non-Georgians qualify as a protected class under § 1985(3), the complaint fails to allege any facts that the conduct of Paulk (or the other Defendants) was motivated by McDaniel's status as a nonresident. To survive dismissal, § 1985 conspiracy contentions must aver that the conspirators were motivated

by class-based animosity.  <u>Kearson v. S. Bell Tel. & Tel.</u> <u>Co.</u>, 763 F.2d 405, 407 (11th Cir. 1985).  Because McDaniel's complaint lacks any such allegations, his § 1985 claim is due to be dismissed with prejudice.


**<u>CONCLUSION</u>**

For the reasons described above, Paulk's motion for summary judgment is **DENIED**.  Dkt. No. 53.  Paulk's amended motion to dismiss is **GRANTED** in part and **DENIED** in part. Dkt. No. 30.  Because the Court finds that service was made in a timely fashion in this case pursuant to Federal Rule 4(m), Paulk's motion to dismiss McDaniel's complaint in its entirety on statute of limitations grounds is **DENIED**.

With respect to McDaniel's § 1983 cause of action, the Court **GRANTS** McDaniel leave to amend his complaint to cure the pleading deficiencies noted by the Court.  Paulk shall file any amended complaint within fifteen days of the date of this order.  Paulk's motion to dismiss McDaniel's § 1985 claim is **GRANTED**.  Paulk's original motion to dismiss is **DISMISSED** as moot.  Dkt. No. 18.  Plaintiff's Fair Debt

Collection Practices Act claim has been abandoned, and is hereby **DISMISSED** as to all Defendants.

     **SO ORDERED,** this ___30th___ day of September, 2008.

                                         _____
                                         JUDGE, UNITED STATES DISTRICT COURT
                                         SOUTHERN DISTRICT OF GEORGIA