IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

JAMIE MCDANIEL,                            :
                                           :
        Plaintiff,                         :
                                           :
vs.                                        :        CIVIL ACTION FILE NO.
                                           :
ROBERT SMITH; ALAN G. PAULK, JR.;          :
ALAN G. PAULK, SR.; JACK HARPER;           :        CV 507-079
TODD WINKLER; JOHN DOE 1; and              :
JOHN DOES 2-5;                             :
                                           :
        Defendants.                        :

**PLAINTIFF'S RESPONSE TO DEFENDANT ALAN PAULK, JR.'S MOTION TO
EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS AND SUPPORTING
MEMORANDUM OF LAW**

COMES NOW Jamie McDaniel, Plaintiff in the above-styled civil action, and files

this, his Response to Defendant's Motion to Exclude Testimony of Plaintiff's Experts and

Supporting Memorandum of Law, respectfully showing this Honorable Court the

following:

I.      **This Court has broad discretion in qualifying expert witnesses.**

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

The U.S. Supreme Court has provided a wealth of information for district courts

to use when analyzing whether an expert should be qualified to testify.  Beginning with

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993), the

federal courts have sought to eliminate "junk science" from testimony provided to jurors. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999), the Court clarified that the *Daubert* analysis under FRE 702 was to be applied not only to cases involving scientific testimony, but to cases involving other areas of expertise as well; however, the Court clarified that the Court has broad discretion in qualifying experts, realizing one standard does not fit all. "We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141, 119 S.Ct. at 1171.

The Court recognized that, "Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from specialized experience.'" *Id.* at 148, 119 S.Ct. at 1174. Further, the Court opined:

> And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony will rest 'upon an experience confessedly foreign in kind to [the jury's] own. The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge . . . Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. As the Solicitor General points out, there are many different kinds of experts, and many different kinds of expertise.

(citations omitted) *Id.* at 149-50, 119 S.Ct. at 1174-75.

Endowing the district court with broad discretion, the *Kumho Tire* Court stated, "[W]e conclude that the trial judge must have considerable leeway in deciding in a

particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S.Ct. at 1176. "It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist." *Id.* at 151, 119 S.Ct. 1175. "Petitioners ask more specifically whether a trial judge determining the 'admissibility of an engineering expert's testimony' may consider several more specific factors that Daubert said might 'bear on' a judge's gatekeeping determination. These factors include . . . Whether a 'theory or technique . . . can be (and has been) tested' . . . Emphasizing the word 'may' in the question, we answer that question yes." *Id.* at 149-50, 119 S.Ct. at 1175.

Since *Kumho Tire*, witnesses have been qualified as experts based on their experience and on-the-job training to testify in federal district courts in fields where "peer review" or "scientific methods" for review are not routine, or perhaps not feasible. A brief survey of the types of experts qualified in these categories include translators, *U.S. v. Abonce-Berrerra*, 257 F.3d 959 (9th Cir. 2001), historians, *U.S. v. Dailide*, 227 F.3d 385 (6th Cir. 2000), *cert. denied*, 540 U.S. 876 (2003), and INS agents, *U.S. v. Lopez-Lopez*, 282 F.3d 1 (1st Cir.), *cert. denied*, 536 U.S. 949 (2002).

The Eleventh Circuit recognized that, "[A] witness may be qualified as an expert by knowledge, skill, experience, training, or education. The operations of narcotics dealers are a proper subject for expert testimony under Rule 702, and we have recognized the 'well-established rule' that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business." *U.S. v. Garcia*, 447 F.3d 1327, 1334-35 (11th Cir.

2006). The Court further opined that narcotics officers' expert testimony was helpful because it may assist the trier of fact to understand the evidence or to determine an issue. *Id.* at 1335.

In the present case, Mr. Tate's testimony is helpful because it will assist the trier of fact in understanding the significance of certain conduct or methods of operation unique to law enforcement.

## II.   Mr. Tate's expert opinion testimony is proper and helpful to the trier of fact.

Mr. Tate testified in his Rule 26 expert witness report that, in formulating his opinions, he applied his "academic training and education that includes a Masters Degree of Public Administration in Criminal Justice, Georgia Law Enforcement Command College Certificate, POST Management Certificate, POST Supervisory Certificate, POST Advanced Certificate, POST Intermediate Certificate, and POST Basic Certificate to use scholarly standards." Rule 26 Report of Michael E. Tate, pg. 2. He also opines that he relied on his personal experience and expertise as a law enforcement practitioner at the rank of: officer, supervisor (Sergeant), manager (Lieutenant and Captain), Trainer, Training Commander and Internal Affairs Commander. *Id.*

Further, Mr. Tate opines that, using his education, training, and experience, he reviewed depositions, an FBI report, open records requests, Coffee County Sheriff's Office Jail SOP 2004, and authenticated GCIC/NCIC records, to analyze the actions taken by Defendants in the present case, comparing them to the "contemporary standards of a modern and professionally administered law enforcement agency." *Id.* at 6. Taking all of this into consideration, Mr. Tate testified in his deposition regarding how a law

enforcement professional should act in a set of circumstances such as the ones present in this case.  Specifically, Mr. Tate testified that:

Q:      So how was that information triangulated?

A:      None of the actors could say when they went to Florida.  The Sheriff said he had a warrant.  GCIC said there is no warrant.  Agents of Coffee County, Georgia, in particular, the sheriff, knew or should have known, according to contemporary law enforcement standards, no warrant existed.

Depo. Of Michael Tate, pg. 56.

Further, Mr. Tate testifies in his Rule 26 Report about the law enforcement agencies National Crime Information Center (NCIC) and Georgia Crime Information Center (GCIC), which allows access to driver's license records issued by each state, criminal history records, and demographic descriptors.  Rule 26 Report, pg. 4.  Mr. Tate testifies on the proper procedure of checking into NCIC/GCIC to determine if there are existing warrants for an individual.  *Id.*  Mr. Tate opines on what the proper procedure is for validating warrant before taking a person into custody.  *Id.*  In his deposition testimony, Mr. Tate testifies that according to the documentation he reviewed, Defendants checked the NCIC/GCIC and found that no warrant existed for Plaintiff McDaniel, but Defendant Smith sent Defendant Harper to apprehend McDaniel anyway. Depo. Of Michael Tate, pg. 56.

Mr. Tate also testifies that when a suspect is taken into custody, normal operating procedure for law enforcement includes booking the person into the jail and holding them until the originating agency comes to pick the individual up.  Rule 26

Report, pg. 5. He opines that is not what happened in this case. Depo. Of Michael Tate, pg. 67.

Mr. Tate's testimony is helpful to the trier of fact to explain standard operating procedures for law enforcement professionals. Just as in *Garcia*, Tate's testimony can help a jury understand the significance of certain conduct or methods of operation unique to law enforcement. *See U.S. v. Garcia*, 447 F.3d 1327, 1334-35 (11th Cir. 2006).

**III.    Mr. Tate's methodology is proper.**

As stated above, Mr. Tate relied on his education, experience, and training to reach his conclusions regarding the Defendants' actions in connection with law enforcement procedures. Under *Kumho Tire*, this is sufficient. Mr. Tate's identification of his process of reasoning as "triangulating" was related adequately to defense counsel, who claim to not have understood it. Mr. Tate explains it very simply:

Q:    And you've used the phrase "triangulate" on several occasions, right?

A    Right.

Q:    It's also contained in page 6 of your report. What does that mean?

A:    It means to take information from different sources and see if it's consistent.

Q:    How many different sources?

A:    It could be two sources or more.

Q:    All right. And can you give me an example of information that you triangulated in this case?

A:    I did. I just gave you an example with Winkler, the Atlanta PD mobile terminal, the 911 dispatch record, the testimony of Veronica, 911 center person.

Depo. Of Michael Tate, pg. 47-48.

Mr. Tate's methodology is proper and his testimony should be admitted.

**IV.  Judge Graham has ruled that Mr. Tate could be substituted as an expert witness.**

Defendants make much of the fact that Mr. Tate was substituted as an expert witness after Plaintiff's previous law enforcement witness was unable to continue in this case.  Judge Graham's ruling on this issue is res judicata.  If Defendants wanted to contest this ruling, they should have appealed the ruling when it was made.

**V.  Mr. Tate's testimony is helpful to the trier of fact.**

The first question for this Court is whether Mr. Tate's testimony will aid the trier of fact.  FRE 702 states in its first sentence, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . ."  In the trial of this case, jurors will be asked to consider what is reasonable conduct on the part of Defendants.  Mr. Tate can aid this investigation for the jury by providing what is reasonable in light of prevailing law enforcement standards.

**VI.  Mr. Evancho is a bail bonding and bail recovery agent expert and does not purport to be an expert, nor offers an expert opinion, on law enforcement.**

In Defendant Smith's Motion to Exclude Putative Expert Testimony of James Evanchos and Brief in Support, he contends that Mr. Evancho is unqualified as an expert because he is not a law enforcement professional and does not purport to be.  Def.'s Brief in Support of His Mot. To Excl. Putative Expert Testimony of James Evancho, p. 3-4.  In fact, Defendant Smith cuts and pastes quotes taken out of context from Mr. Evancho's deposition wherein he states that he is not a law enforcement expert and concludes that, "Mr. Evancho's admission should end the inquiry on whether he is qualified to offer opinions concerning Defendant Smith."  *Id.* at 4.  Had Defendant Smith provided the

Court with a full copy of the exchange between his attorney and Mr. Evancho during his

deposition, the need to clarify that Mr. Evancho is not purporting to be a law enforcement

expert and is not offered for such a reason would be obviated.   In his deposition, Mr.

Evancho stated:

Mr. Waymire: All right.   In what particular area or areas do you claim that you have

specialized knowledge or expertise?

Mr. Evancho: **Bail recovery.   And that would also include bail bonding.**

Mr. Waymire: Any other areas of expertise that you claim – are pertinent to this case

where you have specialized knowledge or skill?

Mr. Evancho:  I wouldn't say I'm an expert, but I do have a background also with law

enforcement training.   **But I'm not going on as expert for that.   My**

**expertise is in the bail bonding and bail recovery.**

Depo. Of James Evancho, pg. 20.

To qualify himself as an expert in bail bonding and bail recovery, Mr. Evancho

lists his experience and training in bail bonding and bail recovery, highlighting his eight

years of experience as a bail recovery agent, his three years of experience in teaching bail

bondsmen courses, his experience in preparing course materials for his bail bondsmen

courses, his experience in setting up numerous bail bonding companies, and his

continuing education requirements that he maintains.  *Id*. at 21, 35.  Further, he identifies

that he is certified by the Georgia Association of Professional Bondsmen.  *Id*. at 90.  That

he is not an expert in law enforcement is beside the point.  As Mr. Evancho explains,

"[B]ut there are a lot of other variances, differences between what we do and law

enforcement, because we have absolutely zero law enforcement abilities."  *Id*. at 42.

The crux of Plaintiff's case is that the Defendants did not have the authority to travel across state lines, kidnap him from his workplace, drive him back to Coffee County, incarcerate him for several days, and transport him to and from the Atlanta City Jail.  Part of Plaintiff's case is that the methods employed by Defendant Smith, as Sheriff of Coffee County, were improper as Defendant Smith authorized Defendant Harper, who was not a bail recovery agent, to kidnap Plaintiff Jamie McDaniel.  Mr. Evancho is being offered by Plaintiff as an expert witness for his expertise in bail bonding and bail recovery agents.  He bases his opinions on his experience, training, and education as a bail bondsman and bail recovery agent.

Mr. Evancho has provided testimony regarding the customs and standards of the bail bonding and bail recovery agent industries and his review of the Plaintiff McDaniel's case in light of those customs and standards.  As an expert witness, Mr. Evancho may assist the jury in understanding the standards of reasonable conduct as it relates to the bail bonding and bail recovery agent industries and how it relates to the Defendants in the present case. *See generally Watkins v. New Castle County*, 374 F.Supp.2d 379, 392-93 (D.Del. 2005).  Therefore, Mr. Evancho's testimony should be admitted.  Any objections that Defendant Smith may have regarding Mr. Evancho's testimony go to the weight of his opinions, not their admissibility. *Id.* at 392.

VII.     **Mr. Evancho's methodology for reaching his conclusions is acceptable**.

Defendant Smith makes much of the fact that Mr. Evancho derives his opinions based on "the law."  In fact, Mr. Evancho testified that bail bonding and bail recovery agents are governed by Georgia law.  Depo of James Evancho, p. 21-25.  Therefore, what constitutes reasonable standards of conduct for a bail recovery agent would be governed

by the law and Mr. Evancho's testimony is not improper.   Further, Mr. Evancho also offers his testimony from his own experience as a bail recovery agent.   When asked to elaborate on his experiences, he states, in one of many relevant sections of his deposition,

Mr. Waymire: Did you use any other method?

Mr. Evancho:  Well, some are just procedural, like on No. 5.  You know, procedurally, you bring them to the jail, you receive a Bondsman Off Bond, which is also known as a release of liability.  That's procedural.  The Code states we have to have one, but that's a procedural event at every jail.  And they are different at every jail.  So I did use some procedural things that occur in the bail recovery industry.

Depo. Of James Evancho, pg. 123.

Mr. Waymire:  And I'm asking you, are there any other opinions in here where you employed some other different methodology, other than applying law to your understanding of the record?

Mr. Evancho:  Let me check, please.  No. 7, once again, procedural, from my experience as working as a bail recovery agent.

Mr. Waymire: So you drew an inference from your experience in that one?

Mr. Evancho:  Correct.

Mr. Waymire: Any others?

Mr. Evancho:  No. 9 is based on procedural.

Mr. Waymire: Tell us what you mean by that.

Mr. Evancho:  It states, Fulton County Jail's refusal to take custody of the defendant due to lack of warrant indicates that they Fulton County, also believe that this

> was a law enforcement matter and not a bail recovery matter. Bail
> recovery agents do not have the ability to execute warrants. So,
> procedurally, we come in with different paperwork. So that is from my
> experience, interacting with the different jails. And I was approved within
> Fulton County probably four or five years ago, so I understand their
> procedures as well.

*Id.* at 124-25.

Mr. Evancho expresses that his opinions are based on his experiences as a bail recovery agent and on his understanding of the reasonable standards of conduct for bail recovery agents under the law. This is an acceptable methodology under *Kumho*.

### VIII.   Mr. Evancho's testimony is helpful to the trier of fact.

The first question for this Court is whether Mr. Evancho's testimony will aid the trier of fact. FRE 702 states in its first sentence, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . ." In the trial of this case, jurors will be asked to consider what is reasonable conduct on the part of Defendants. Plaintiff McDaniel's civil rights were violated when Defendant Smith unlawfully authorized Defendant Harper to travel across state lines to kidnap McDaniel. Defendant Harper was not a bail recovery agent and Defendant Smith was not authorized to send Defendant Harper to take McDaniel from his workplace. Mr. Evancho can aid the jury in understanding what is customary and expected in the bail bonding and bail recovery industry as it relates to this case.

### IV.   Conclusion

Mr. Evancho, based on his specialized expertise and knowledge of the bail bonding and bail recovery agent industry, can assist the jury in understanding what would have been reasonable conduct. This Court has broad discretion in admitting expert testimony and is given leeway in determining whether a purported expert witness's testimony is reliable. Here, Mr. Evancho's testimony is not only helpful to the trier of fact based on his ability to explain to the jury the inner workings of bail bonding and bail recovery, but relevant and probative because his testimony is based on what constitutes reasonable standards of conduct according to his experience and training.

Mr. Tate, based on his specialized expertise and knowledge of law enforcement, can assist the jury in understanding what would have been reasonable conduct. This Court has broad discretion in admitting expert testimony and is given leeway in determining whether a purported expert witness's testimony is reliable. Here, Mr. Tate's testimony is not only helpful to the trier of fact based on his ability to explain to the jury the inner workings of law enforcement, but relevant and probative because his testimony is based on what constitutes reasonable standards of conduct according to his experience and training. Therefore, Defendant's Motion to Exclude should be DENIED.

This the 23rd day of January, 2009.

**EDENFIELD, COX, BRUCE & CLASSENS, P.C.**

/s/ V. Sharon Edenfield
**SUSAN W. COX**
State Bar of Georgia No. 738550
**V. SHARON EDENFIELD**
State Bar of Georgia No. 141646

Attorneys for Plaintiff
115 Savannah Ave.

P.O. Box 1700
Statesboro, GA  30459
912.764.8600  telephone
912.764.8862  facsimile
susan@ecbcpc.com
sharri@ecbcpc.com


**JON BROCKMAN** (Admitted *Pro Hac Vice*)
**J. STUART TEAGUE, JR.**  (*Admitted Pro Hac Vice*)
Brockman & Teague, LLC
110 Veterans Memorial Blvd.
Ste. 200
Cumming, GA  30040
770.205.8887
jbrockman@brockmanteague.com
steague@brockmanteague.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the following counsel of record with a true and correct copy of the foregoing pleading by serving via electronic filing, addressed to the following:

Sean L. Hynes, Esq.
Downey & Cleveland, LLP
288 Washington Ave.
Marietta, GA  30060

Terry E. Williams, Esq.
Jason Waymire
268 West Pike St.
Suite B
Lawrenceville, GA  30045

Boyd English, Esq.
208 S. Peterson Ave.
Ste. 207, Box 2
Douglas, GA  31533

Stephen Gunn Dillard, Esq.
Dillard & Dillard
P.O. Box 898
Waycross, GA 31502

J. Wade Padgett, Esq.
J. Wade Padgett, PC
1223 George C. Wilson Dr.
Augusta, GA 30909

This 23rd day of January, 2009.

EDENFIELD, COX, BRUCE & CLASSENS, P.C.


/s/ V. Sharon Edenfield
State Bar of Georgia No. 141646
Attorney for Plaintiff