IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| JAMIE MCDANIEL,<br><br>   Plaintiff,<br>vs.<br><br>ROBERT SMITH, *et al.*,<br><br>   Defendants. | CIVIL ACTION FILE NO.<br><br>5:07-CV-0079 |

### DEFENDANTS' SMITH AND WINKLER'S NOTICE OF OBJECTION AND APPEAL UNDER 28 U.S.C. § 636 (b)(1) TO ORDER BY UNITED STATES MAGISTRATE JUDGE

Come now **DEFENDANTS SMITH AND WINKLER** in the referenced action and, pursuant to 28 U.S.C. § 636 (b)(1), file this their notice of objection and appeal from the United States Magistrate Judge's March 12, 2009 *Orders* [Docs. 195 & 196] denying in part these Defendants' motions to exclude the testimony of James Evancho and Michael Tate filed in the referenced case, as follows:

### INTRODUCTION

Defendants appeal from the March 12, 2009 Orders insofar as they fail fully to exclude the testimony of James Evancho and Michael Tate, persons identified by Plaintiff as putative experts in this case. Defendants seek review solely to the extent that their motions were denied.  Defendants also seek clarification of their rights to take additional depositions and further challenge introduction of testimony by Evancho and/or Tate through motions *in limine*.

For the sake of efficiency and to preserve and invoke a ruling or clarification on all points either denied or not ruled upon under the appealed Orders, Defendants incorporate by referenced their Daubert Motion and the supporting Brief and Reply Brief [Docs. 148, 148-2 & 184] relating to Mr. Tate's testimony, their Daubert Motion and the supporting Brief and Reply Brief [Docs. 147, 147-2 & 183] relating to Mr. Evancho's testimony, and Defendants rely upon the relevant portions of those filings in support of this appeal. Without waiving points relied upon in those motions, certain points are emphasized below:

### I.      MR. TATE'S TESTIMONY SHOULD BE EXCLUDED

#### A.     Mr. Tate's Testimony About His "Experiences" Is Not Permissible Expert Testimony and Was Not Properly Disclosed

After extensive briefing and a hearing, wherein Plaintiff abandoned any reliance upon any *disclosed* opinion testimony by Mr. Tate, Magistrate Judge Graham ordered that Mr. Tate cannot offer any opinion, but can "provide testimony as to his experiences." *See* Order [Doc. 196]. That is not a proper subject of *expert* testimony, because "[T]he ability to answer hypothetical questions is "[t]he essential difference" between expert and lay witnesses." Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1202 n. 16 (3d Cir.1995) (quoting Teen-Ed Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 404 (3d Cir.1980)); *see also* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (holding that nature and treatment of injury was lay testimony, but doctor's causation opinion was expert testimony); Davoll v. Webb, 194 F.3d 1116, 1138

(10th Cir.1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.").

On the other hand, *if* Mr. Tate's undisclosed "experiences" somehow amount to "expert testimony," Plaintiff has utterly failed to meet his burdens (1) to disclose the testimony pursuant to Rules 26 and 37 and the Court's expert disclosure schedule; and (2) to show that the testimony passes muster under Fed. Rule of Evidence 702 and Daubert. Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1107 (11th Cir.2005) (burden is on the proponent to show admissibility of expert testimony); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (same).

Regardless of whether Mr. Tate's "experiences" are classified as expert or lay testimony, Plaintiff failed to reveal any pertinent "experiences" by Mr. Tate. In this case Plaintiff filed Mr. Tate's Rule 26 report. [Doc. 123-2]

Under Rule 26, "The expert's written report must contain:

a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

OFS Fitel, LLC v. Epstein, Becker and Green, P.C., 549 F.3d 1344, 1361 (11th Cir. 2008) (quoting Fed.R.Civ.P. 26(a)(2)(B)).

Nothing in Mr. Tate's report discloses any relevant "experiences" by Mr. Tate. Defendants are left substantially in the dark about what "experiences" Mr. Tate might discuss before a jury, even after an extensive deposition. The deposition properly focused on Mr. Tate's express opinion and methodology in the case, testimony which now has been completely excluded.

Defendants respectfully submit that Mr. Tate's unknown "experiences" were never disclosed to Defendants, would not be properly considered in a trial of this case, and there is no way to evaluate the relevancy of such testimony at this point. Rules 26 (a) and 37 (c) mandate exclusion.

### B. Mr. Tate Does Not Offer Any Admissible Information That Would Be Helpful To A Jury

Plaintiff intends to use Mr. Tate's testimony to provide opinions about "what is reasonable in light of prevailing law enforcement standards" and "normal operating procedures for law enforcement." *See Plaintiff's Brief* at 7, 5 [Doc. 170]. To the extent that the appealed Order permits that type of testimony (which seems doubtful but is not entirely clear), it must be reversed. Certain of Plaintiff's contentions are addressed here:

#### 1. Unidentified "Standards"

According to Plaintiff, Mr. Tate should be allowed to discuss his idea of "what is reasonable in light of prevailing law enforcement standards." *Plaintiff's Brief* at 7 [Doc. 170]. First, that is not an element of any claim presented by Plaintiff, so it is neither relevant nor "helpful" to a jury. Second, Mr. Tate failed to identify, define, review, articulate, or include in his report any such "standard." *See* Tate Dep. at 146-147, 153-

154; 21-22 & Exhibit 2 (Subpoena) at Ex. A categories 3 and 4.  Third, Mr. Tate did not explain how any alleged "standard" applies to the facts of this case, and of course there was no way to cross-examine Mr. Tate about these undefined, amorphous "standards" that were never identified in Mr. Tate's Rule 26 Report.

Even indulging the doubtful assumption that some unreviewed, unidentified "standard" is part of Mr. Tate's testimony and contributed to his sole opinion (namely that Defendants engaged in a "criminal conspiracy"), "**an expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion**." Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1344 (11th Cir.2003); *see also* Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1112 (11th Cir.2005) (affirming exclusion of law enforcement expert opinions that did not identify any supporting basis or standard).

Finally, in relation to these putative "standards," Mr. Tate's mendacity is revealing, and counsels in favor of exclusion:

> Q  **Have you ever formulated policies or standards relating to a Georgia sheriff's office or sheriff's deputies that are pertinent to this case?**
>
> A   **Yes, sir**.  I believe that the Henry County Sheriff's Office utilized multiple policies and procedures that were generated either by me or reviewed and amended by me over the eight or nine or maybe ten years that I was on the staff.
>
> …
>
> Q   Okay.  So you're telling me that in all those fields you formulated policies for a sheriff's office or that were used by a sheriff's office?
>
> A   I suspect, yeah.
>
> Q   You suspect?

A   Uh-huh.

Q   Do you know?

A   Well, I know that the Georgia Law Enforcement Certification Program, when it was originally begun to replace the CALEA Program in Georgia, my chief, Wayne Bolden, was one of the original people who started that program. And a lot of my work was utilized to go statewide in the formulation of policies and documentation used to formulate policies for law enforcement agencies, sheriffs and police departments. So to what extent they were used by those sheriff's departments, I don't know.

**Q   So basically speculation?**

**A   Oh, certainly.**

Tate Dep. at 142-143.

In sum, Mr. Tate's commentary about alleged "standards" is not helpful to the trier of fact, does not pass muster under Rule 702, and must be excluded.

### 2.  Criminal Databases

Plaintiff claims that Mr. Tate's commentary about criminal information databases would be helpful to the jury. Mr. Tate's criminal database commentary does not have any bearing on any disputed fact in this case. Moreover, Mr. Tate's criminal database commentary suffers from the same defects as his other testimony—lack of articulated methodology, reasoning, explanation, analysis, standards, or application. Moreover, Mr. Tate's "experiences" with criminal databases were not disclosed, and his mere *ipse dixit* is not enough for admission under Rule 702 and Daubert.

### 3.  Jail Booking Procedures

Third, Plaintiff identifies language from the "Introduction" section of Mr. Tate's Rule 26 report, purporting to relate to normal jail booking procedures. *Plaintiff's Brief* at 5-6 [Doc. 170]. Initially, Mr. Tate has never worked at a Georgia Sheriff's Office, Tate Dep. at 140-141, so it is curious how he claims to have some expertise about booking policies at a jail. Probably he made it up. Mr. Tate offers no explanation, and no basis for his commentary.

Second, booking or lack thereof is not relevant to any claim in this case, because there is no basis for a claim that any Defendant was responsible for booking or lack thereof. Even if some Defendant was responsible for booking, it would not give rise to liability. This is because there is no actionable "right" to be booked into a jail under existing law, and no reason to suppose that there ever should be.

Third, even if booking procedures are somehow relevant to any disputed issue, the Coffee County Jail's written policies and procedures are in the record, and multiple witnesses familiar with the Coffee County Jail's operations have testified about jail booking procedures. No "experience" by a person who has never worked at a Georgia Sheriff's Office (*i.e.*, Mr. Tate) is needed to comment on a record that is replete with testimony from fact witnesses who have personal knowledge. This is particularly so in light of the fact that Mr. Tate never worked at the Coffee County Jail.

II.     **MR. EVANCHO'S TESTIMONY SHOULD BE EXCLUDED**

Judge Graham's Order relating to Mr. Evancho states in part "James Evancho will be allowed to offer testimony regarding the customs and standards of the bail bonding and bail recovery agent industries." *See* Order [Doc. 195].

As with Mr. Tate, Plaintiff filed a report prepared by Mr. Evancho. As with Mr. Tate's report, Mr. Evancho's report does not provide any information within the scope of what Judge Graham's Order permits. This completely defeats the purpose of Fed.R.Civ.P. 26(a)(2)(B), and Rule 37 (c) mandates exclusion of any such undisclosed testimony. Any other result is unfair to the Defendants.

Moreover, Mr. Evancho testified that, aside from black letter law, there are *no* bail industry standards—written or unwritten—that apply to this case:

> Q   Aside from state or federal law, is there any other source of published standards for bail recovery or bail bonding?
>
> A   For Georgia?
>
> Q   Let's say for Georgia or for Florida, to your knowledge.
>
> A   Any other -- other than the codes?
>
> Q   Yeah. I'm laying aside legal authorities --
>
> A   Okay.
>
> Q   -- like a statute or a federal law or a case law from the state court.
>
> A   Uh-huh.
>
> Q   Are there any other standards that are published in regard to bail recovery or bail bonding?
>
> A   It's not -- no, there's -- no.

Evancho Dep. at 104.

> Q. … Are there are unwritten standards that you feel apply to this case?
>
> A   No, not that apply to this case.

Evancho Dep. at 105.

8

Accordingly, there is no room for "expert testimony" from Mr. Evancho on alleged bail industry standards, because he has already stated that such standards do not exist. The only standards about which Mr. Evancho is aware consists of the law. Plainly the Court provides applicable law, and the jury applies it. Mr. Evancho has no place in that procedure.

### III. IF MR. TATE OR MR. EVANCHO ARE PERMITTED TO TESTIFY, DEFENDANTS ARE ENTITLED TO RECONVENE THEIR DEPOSITIONS AT PLAINTIFF'S EXPENSE, AND NEITHER WITNESS IS ENTITLED TO EXPERT COMPENSATION

Under Judge Graham's Orders, neither Mr. Tate nor Mr. Evancho can provide expert testimony, since "[T]he ability to answer hypothetical questions is "[t]he essential difference" between expert and lay witnesses." Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1202 n. 16 (3d Cir.1995) (quoting Teen-Ed Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 404 (3d Cir.1980)); *see also* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786 (1993). Instead, the Orders appear to permit Mr. Evancho and Mr. Tate to provide certain lay testimony. Lay testimony is not governed by Rule 26 (a) or Rule 702, and no expert compensation is due from Defendants.

On the other hand, Plaintiff has sandbagged the Defendants by abandoning material reasonably disclosed in discovery relating to Mr. Tate and Mr. Evancho, in favor of undisclosed testimony. Even worse, the appealed Orders effectuate Plaintiff's improper subversion of the discovery rules, to the prejudice of the Defendants. Finally,

9

Defendants have been put to considerable expense in deposing and paying Mr. Evancho and Mr. Tate for their time under "expert" rates.

Accordingly, if the Court permits testimony by Mr. Tate and/or Mr. Evancho, the Court should permit Defendants leave to reconvene their depositions to cover the areas in which the Court intends to permit Mr. Tate and/or Mr. Evancho to testify. The full expense of this exercise—including attorney's fees, deposition and transcript costs, and any compensation to Mr. Tate and/or Mr. Evancho—should be borne by the Plaintiff, given that he is the sandbagging party who has unfairly imposed this cost on the Defendants. Plaintiff's ability to use Mr. Tate's testimony or Mr. Evancho's testimony should be conditioned upon Plaintiff's payment in full of all such costs and fees.[1]

### IV. DEFENDANTS PRESERVE THEIR RIGHT TO FILE MOTIONS *IN LIMINE* TO EXCLUDE TESTIMONY BY TATE AND/OR EVANCHO BASED ON GROUNDS UNRELATED TO EXPERT WITNESS RULES

The appealed Orders expressly contemplate and permit objections at trial, which would appear to encompass additional motions *in limine* that do not rely upon the expert witness standards. However, to the extent that the Orders rules *sub silentio* on Defendants' objections outside of their Daubert challenges (such as challenges based on relevance and unfair prejudice), Defendants hereby appeal and request express leave to move *in limine* to exclude testimony by Mr. Tate and/or Mr. Evancho on any pertinent basis, such as relevancy or competency. This is particularly important because the

---

[1] However, should Plaintiff opt not to use testimony by Mr. Tate or Mr. Evancho following costs being incurred in reconvened deposition(s), Plaintiff should not be relieved of his obligation to pay the Defendants' expenses.

10

Court's rulings on the parties' dispositive motions could substantially impact what evidence is admissible in relation to any claims that ultimately remain for trial.

## CONCLUSION

Defendants Smith and Winkler request partial reversal of the United States Magistrate's *Orders* to the extent that these Defendants' motions to exclude were denied. Defendants also request clarification that objections aside from those pertinent to expert witness rules (*e.g.*, objections to relevancy) can be raised by motion *in limine* as well as at trial. Finally, to the extent that Mr. Tate or Mr. Evancho are permitted to testify, Defendants request leave to reconvene their depositions, with all associated costs and fees to be paid by Plaintiff.

Respectfully submitted,

**WILLIAMS, MORRIS & BLUM, LLC**

/s Jason Waymire_____
JASON C. WAYMIRE
Georgia Bar No. 742602
Attorneys for Defendants Smith and Winkler, Individually

4330 South Lee St., NE
Building 400, Suite A
Buford, Ga 30518-3027
Telephone: (678) 541-0790
Facsimile: (678) 541-0789

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANTS' SMITH AND WINKLER'S NOTICE OF OBJECTION AND APPEAL UNDER 28 U.S.C. § 636 (b)(1) TO ORDER BY UNITED STATES MAGISTRATE JUDGE** on counsel for all parties through the Court's CM/ECF system, which will provide electronic notification to:

Stephen Gunn Dillard     stephen@wayxcable.com

Jon Brockman     jbrockman@brockmanteague.com

V. Sharon Edenfield     sharri@ecbcpc.com, shelbym@ecbcpc.com

Boyd English     boyd_english@yahoo.com

Sean L. Hynes     hynes@downeycleveland.com

This 26th day of March, 2009.

        /s/ Jason Waymire
        JASON WAYMIRE
        Attorney for Defendants Smith & Winkler