# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

```
JAMIE MCDANIEL,                    *
                                   *
    Plaintiff,                     *
                                   *
vs.                                *      CV 507-079
                                   *
ROBERT SMITH; ALAN G. PAULK,       *
JR.; ALAN G. PAULK, SR.; JACK      *
HARPER; TODD WINKLER; JOHN         *
DOE 1; and JOHN DOES 2-5           *
                                   *
    Defendant.                     *
```

## ORDER

Plaintiff filed the above-captioned case after an allegedly wrongful arrest and incarceration. Defendants Robert Smith, Jack Harper, and Todd Winkler are associated with the Coffee County Sheriff's Office, which made the arrest. Defendants Alan Paulk Sr. and Jr. are private individuals with connections to Coffee County who allegedly conspired with the other defendants to unlawfully arrest and incarcerate McDaniel. McDaniel's complaint contains eighteen counts, some based on federal law and some based on state law.

Paulk Jr. has moved to dismiss McDaniel's § 1983 conspiracy claim against him. The Court **DENIES** that motion. (Dkt. No. 128).

**BACKGROUND**

A.  Factual Background

For purposes of this motion to dismiss, the Court accepts all well-pleaded facts as true and construes them in the light most favorable to Plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).

Plaintiff McDaniel and Defendant Paulk Jr. were friends. One night in Atlanta, city authorities arrested McDaniel for urinating in public. The next morning, Paulk Jr. contacted a bonding company and, with the bonding company's assistance, bailed McDaniel out of jail. As a part of Paulk Jr.'s arrangement with the bonding company, Paulk Jr. agreed to act as a surety if the bonding company had to forfeit the bond money.

McDaniel moved to Florida not long after the public-urination incident, and subsequently failed to appear for a court date in Atlanta. The bonding company then forfeited the bail money to the City of Atlanta. After forfeiting

the money, the bonding company sued Paulk Jr. to recover what it had lost.

Paulk Jr. sought to deliver McDaniel to the Atlanta jail, believing that if he could deliver McDaniel to Atlanta, he would no longer be liable on the debt arising from McDaniel's bond. Paulk Jr. had strong connections in Coffee County, Georgia, and in seeking to deliver McDaniel to Atlanta, he turned to those connections. His father, Paulk Sr., was a financial contributor to then-Sheriff Smith, another defendant in this action, and made a campaign contribution to Smith "immediately prior" to the incidents allegedly giving rise to liability.[1] Am. Compl. ¶ 23. Defendant Harper, a reserve Deputy with the Sheriff's Office, described himself as a "flunky" not only for the Sheriff's Office, but also for Paulk Sr. Am. Compl. ¶ 24 (Dkt. No. 125). Paulk Jr. had been an Assistant District Attorney in Coffee County. In sum, Plaintiff alleges that Paulk Sr. and Paulk Jr. had "political clout, patronage and influence with Defendant Harper and Defendant Smith." Am. Compl. ¶ 25.

---

[1] Sherriff Smith was subsequently implicated for malfeasance while in office. He surrendered his P.O.S.T. certification and resigned.

Paulk Jr. allegedly used his familiarity and influence with the Coffee County Sheriff's Office, Sheriff Smith, and Deputy Harper to "persuade" and "cause" Smith and Harper to go to Florida, capture McDaniel, and deliver McDaniel to the Atlanta jail. Am. Compl. ¶ 23, 25. Although the City of Atlanta had not issued a warrant, the Sheriff's Office did as Paulk Jr. asked.

At Smith's instruction, Harper drove from Coffee County, Georgia to Flagler Beach, Florida to arrest McDaniel. Harper drove an official patrol car, wore a gun, and carried a law enforcement badge. He entered McDaniel's place of employment and arrested McDaniel. Harper then drove north. At Smith's direction, Harper did not take McDaniel directly to Atlanta, but instead put McDaniel in the Coffee County Jail. McDaniel remained in the Coffee County jail for over seventy-two hours. He was not booked, fingerprinted, photographed, or presented to any judicial officer.

After three days, Smith ordered another Deputy, Defendant Winkler, to take McDaniel to the city jail in Atlanta. Winkler put McDaniel into a patrol car and drove him to Atlanta, but the authorities in Atlanta refused to

admit McDaniel because there was no warrant or other document authorizing them to take McDaniel into custody.

McDaniel was then released. Upon his return to Florida, he discovered that his boss had fired him because, after seeing McDaniel arrested at work, his boss believed that he must have been "a scoundrel and criminal who had committed grave offenses." Am. Comp. ¶ 42. McDaniel's landlord, also believing McDaniel to be "a criminal," evicted him. Am. Compl. ¶ 43.

In response to the suit filed against him by the bonding company, Paulk Jr. filed an Answer. In it, Paulk Jr. averred that he had "personally gone to 'extraordinary' lengths to deliver the 'body' of Plaintiff to the City of Atlanta." Am. Compl. ¶ 22.

B.  Procedural Background

This is Paulk Jr.'s second motion to dismiss the § 1983 conspiracy claim. After Paulk Jr.'s first motion to dismiss (Dkt. No. 18), the Court held that Plaintiff's original complaint did not sufficiently allege a § 1983 conspiracy, in part because it did not "explicitly aver that Paulk [Jr.] put the conspiracy in motion, or that

Paulk [Jr.] was the impetus behind McDaniel's abduction and incarceration." 9/30/08 Order at 37-38 (Dkt. No. 122). The Court observed, however, "that it is difficult to obtain direct evidence of unlawful conspiracies, and that it is rare that such evidence is uncovered in a civil conspiracy case." Id. at 37. The Court granted Plaintiff leave to amend under Federal Rule of Civil Procedure 15(a)(2). Id. at 39.

Plaintiff amended his complaint. See Am. Compl. (Dkt. No. 125). Paulk Jr. has now filed a second motion to dismiss arguing that Plaintiff failed to cure the deficiencies that the Court noted in its previous order. (Dkt. No. 128).

## DISCUSSION

I.   STANDARD ON MOTION TO DISMISS

A complaint need only "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). When considering motions to dismiss, courts accept the well-pleaded facts in the complaint as true and construe them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 129 S.Ct.

1937, 1950 (2009); Pielage, 516 F.3d at 1284. Purely conclusory allegations are not well-pleaded, however, and "are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1947. But the plausibility standard is not a probability standard -- "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id.; Bell Atlantic, 550 U.S. at 556. In short, to survive a motion to dismiss, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Bell Atlantic, 550 U.S. at 570.

II. PLEADING STANDARD FOR § 1983 CONSPIRACY

Paulk Jr. argues that a heightened pleading standard applies to § 1983 conspiracy claims. Quoting the Eleventh Circuit's decision in Harvey v. Harvey, Paulk Jr. writes that "[f]or purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts,

the relationship or nature of the conspiracy between the state actor(s) and the private persons." 949 F.2d 1127, 1133 (11th Cir. 1992). This requirement that conspiracy claims be "pl[ed] in detail" can be traced to Fullman v. Graddick, an earlier Eleventh Circuit case that the Harvey court cited in support of the above-quoted proposition. See Fullman, 739 F.2d 553, 556-57 (11th Cir. 1984). Because the general rule for sufficiency of a complaint, Federal Rule of Civil Procedure 8(a)(2), would require only "a short and plain statement of the claim showing that the pleader is entitled to relief," the rule from Harvey and Fullman requiring plaintiffs to "plead in detail" constitutes a heightened pleading requirement. North Jackson Pharmacy, Inc. v. Express Scripts, Inc., 345 F.Supp.2d 1279, 1287-88 (N.D. Ala. 2004).

For the reasons that follow, the Court concludes that Plaintiff's allegations are sufficient to meet Harvey's heightened standard. However, two post-Harvey cases from the United States and one from the Eleventh Circuit strongly suggest that the heightened pleading requirement no longer applies.

Since Harvey, the United States Supreme Court has twice spoken about heightened pleading requirements. In Leatherman v. Tarrant County, the Court addressed the Fifth Circuit's then-existing rule that a "heightened pleading standard" applied in § 1983 cases alleging municipal liability. 507 U.S. 163, 164 (1993). The Court noted that Rule 8(a)(2) generally required only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 168. The Court further noted that although Rule 9(b) calls for heightened pleading standards for allegations of fraud or mistake, the Rules make no provision for heightened pleadings standards for allegations of municipal liability. Id. The Supreme Court wrote "*[e]xpressio unius est exclusion alterius*" and held that the plaintiff could only be held to the standard of Rule 8(a)(2). Id.; accord Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 512-13 (2002) (striking heightened pleading requirement in employment discrimination cases on same basis).

Since then, the Eleventh Circuit has "address[ed] . . . the impact of Leatherman on the law of this circuit." Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837

(11th Cir. 2004). The Swann court noted that "[p]rior to Leatherman, this circuit recognized a heightened pleading standard broadly applicable in § 1983 actions." Id. at 836. The court then succinctly concluded that "Leatherman made it clear that any heightened pleading requirements in § 1983 actions against entities that cannot raise qualified immunity as a defense are improper." Id. at 837.

Paulk Jr. is a private individual, not an official. He may not raise qualified immunity as a defense, and does not argue otherwise. Therefore, Leatherman, Swierkiewicz, and Swann suggest that the Rule 8(a)(2) standard governs this case, not the heightened pleading requirement from Harvey. Accord North Jackson, 345 F.Supp.2d at 1287 (concluding that Supreme Court has rejected Fullman's heightened pleading requirement).

This Court concludes that the Amended Complaint passes muster under either the heightened Harvey/Fullman standard or the Rule 8(a)(2) standard.

III. SUFFICIENCY OF ALLEGATIONS

Paulk Jr. argues that the Amended Complaint does not adequately allege a connection between Paulk Jr. and law

enforcement officials. Stated differently, Paulk Jr. argues that the facts alleged, if true, do not adequately demonstrate that he was a state actor for purposes of § 1983 liability. Before deciding whether the allegations of the complaint are sufficient, the Court must first determine how strong the alleged connection between a private party and law enforcement officials must be in order for the private party to become a "state actor" who may be held liable under § 1983.

Section 1983 imposes liability for actions taken "under color of state law" that violate the Constitution. Nelson v. Campbell, 541 U.S. 637, 643 (2004). Furthermore, most constitutional provisions themselves -- including the right to liberty secured by the Fourteenth Amendment -- proscribe only conduct that is "fairly attributable" to the government. Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). In the context of a § 1983 suit premised upon constitutional violations, these two tests -- "color of state law" and "fair attribution" -- are identical. Id. at 928-29. Paulk Jr., therefore, may be liable under § 1983 if his conduct passes the "fair attribution" test. Id.

The "fair attribution" test has two prongs. Id. at 937; accord Harvey, 949 F.2d at 1130. First, for § 1983 liability to accrue, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." Lugar, 457 U.S. at 937. Phrased differently, this first prong asks whether the alleged violation "could in any way be ascribed to a governmental decision." Id. at 937-38. This first prong tests the relationship between the allegedly unconstitutional conduct and the government. Id. (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972)). Second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. at 937. This second prong tests the relationship between the government and the private party. Id. at 938-39 (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978)). In the context of this case, the first prong will test the relationship between McDaniel's allegedly unconstitutional arrest and the government, and the second prong will test the relationship between the government and Paulk Jr.

Plaintiff's allegations plausibly suggest that the first prong is met -- i.e., that the allegedly unconstitutional arrest of McDaniel was sufficiently related to government action.  See id.  Harper was a Coffee County Deputy and was driving an official Coffee County car.  Therefore, Harper was "a person for whom the state is responsible," and his decision to follow Paulk Jr.'s directions to arrest McDaniel can be ascribed to the government.  See id.; Harvey, 949 F.2d at 1130; see generally Soldal v. Cook County, 506 U.S. 56 (1992) (holding deputy sheriffs liable under § 1983).

The second prong of the "fair attribution" test is where the rubber meets the road in this case.  The second prong requires that the person "charged" with the deprivation of rights be a state actor.  See Lugar, 457 U.S. at 937; Harvey, 949 F.2d at 1130.  This prong tests the relationship between Paulk Jr. and the government.  See Lugar, 457 U.S. at 137.  Only in rare circumstances can a private party, like Paulk Jr., be viewed as a state actor.  Id.  However, where a private party is "jointly engaged" with government officials in the challenged action, that private party may be considered a state actor and may be

liable under § 1983.  Dennis v. Sparks, 449 U.S. 24, 28 (1980); accord Lugar, 457 U.S. at 931; Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Harvey, 949 F.2d at 1133.  This joint-engagement theory of § 1983 liability is sometimes called a theory of § 1983 "conspiracy."  See Harvey, 949 F.2d at 1133.

The Eleventh Circuit has elaborated on the "jointly engaged" test and has traced the line upon which Plaintiff's allegations survive or fail.  If the allegations suggest only that Paulk Jr. was "merely calling upon" official authority, albeit insistently, without joining in the exercise of that authority, then he was not a state actor and cannot be liable under § 1983.  Dye v. Radcliff, 174 Fed. Appx. 480, 482-83 (11th Cir. 2006) ("[W]e join other circuits in saying that a private party does not act under color of state law merely by calling upon official state authority when he does not also join in the exercise thereof."); see id. at 483 n.1 (collecting cases).  However, if the allegations plausibly suggest that Paulk Jr. and Harper "reached an understanding" with an official to deprive McDaniel of his rights, then the complaint may adequately state a § 1983 conspiracy claim.

Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002); Lowe v. Aldridge, 958 F.2d 1565, 1573 (11th Cir. 1992); N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990).  To establish this "understanding," Plaintiff need not allege a "smoking gun," but must allege "some evidence of agreement among defendants."  Rowe, 279 F.3d at 1284; Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990).

The pared-down question before this Court, therefore, is whether the Amended Complaint plausibly suggests that Paulk Jr. "reached an understanding" with Coffee County officials, see Rowe, 279 F.3d at 1283, or "merely call[ed] upon" them, see Dye, 174 Fed. Appx. at 482-83.[2]

The Amended Complaint explicitly avers that Paulk Jr. played a significant role in the alleged conspiracy.  See 9/30/08 Order at 38.  It also "plausibly suggest[s]" that

---

[2] The Court recognizes that some tension may exist between Dye and Rowe.  Dye states that "a private party does not act under color of state law merely by calling upon official state authority when he does not also join in the exercise thereof."  174 Fed. Appx. at 482-83.  Rowe reaffirmed earlier decisions establishing that when a private party and an official "reach[] an understanding" to violate a plaintiff's rights, the private party may be liable under a theory of § 1983 conspiracy.  279 F.3d at 1283-84.  These rules could overlap in the case of a private defendant who "reached an understanding" with an official to violate a plaintiff's rights, but who did not "join in the exercise" of official authority after conspiring with the official.  See Dye, 174 Fed. Appx. at 482-83; Rowe, 279 F.3d at 1283-84.  In any event, the allegations of the Amended Complaint push this case beyond any Dye and Rowe overlap into clear Rowe territory.

Paulk Jr. "reached an understanding" with Smith and/or Harper. See Bell Atlantic, 550 U.S. at 557; Rowe, 279 F.3d at 1283.

The Amended Complaint alleges persuasion. It states that Paulk Jr. "persuade[d]" and "cause[d]" Defendants Smith and Harper to arrange for McDaniel's arrest in Florida.³ Am. Compl. ¶ 23, 25. Alleging persuasion of the Sheriff's Office is equivalent to alleging an "understanding" with the Sheriff's Office because both allegations, if proven, would establish a "meeting of the minds." See Adickes, 398 U.S. at 158.

Nor, in light of the allegations regarding Paulk Jr.'s influence, is the allegation that Paulk Jr. "persuade[d]" the Sheriff's Office so conclusory as to vitiate its "entitle[ment] to the assumption of truth" at the motion to dismiss stage. See Iqbal, 129 S.Ct. at 1950. Apart from alleging the date, time, and medium of the allegedly persuasive communication, it is difficult to think of how the allegation of persuasion might be made more concrete. Requiring a plaintiff to supply the date, time, or medium of an allegedly conspiratorial communication would be

---

³ The original complaint did not include these allegations. See (Dkt. No. 1).

unreasonable because "noncircumstantial evidence of the conspiracy could only come from adverse witnesses." Adickes, 398 U.S. at 157; see also 9/30/08 Order at 39. Adverse witnesses would be unlikely to supply the plaintiff with such incriminating evidence before being subpoenaed for deposition.  All but the truly infirm would refrain from memorializing their conspiracy on a piece of paper for later production and self-harm in a lawsuit.

The Amended Complaint also alleges influence. Plaintiff alleges that Paulk Sr. made a campaign contribution to Smith "immediately prior" to Harper's trip to Flagler Beach,[4] and that Harper -- a reserve Deputy Sheriff -- served as Paulk Sr.'s personal "flunky."[5]  Am. Compl. ¶ 23, 24.  The Amended Complaint notes that Paulk Sr. had been an Assistant District Attorney in Coffee County.  Most tellingly, the Amended Complaint alleges that, at Paulk Jr.'s request, the Coffee County Sheriff's Office dispatched a county car to drive from Coffee County, Georgia to Flagler Beach, Florida to make a warrantless arrest of a man who had failed to appear on a public

---

[4] The original complaint did not include this allegation.  See (Dkt. No. 1).

[5] The original complaint did not include this allegation.  See (Dkt. No. 1).

urination charge in Atlanta. Taken together, these facts permit, at this stage, the "reasonable inference" that Paulk Jr. had influence over the Sheriff's Office. See Iqbal, 129 S.Ct. at 1947.

Finally, the Amended Complaint alleges acknowledgment. Plaintiff alleges that in Paulk Jr.'s Answer to the bonding company's Complaint against him, Paulk Jr. stated that he had "personally gone to 'extraordinary' lengths to deliver the 'body' of Plaintiff to the City of Atlanta."[6] Am. Compl. ¶ 22. Viewed in the light most favorable to Plaintiff, this averment constitutes an acknowledgment by Paulk Jr. that he played a significant role in the events surrounding McDaniel's seizure from Flagler Beach.

Plaintiff has alleged persuasion, influence, and acknowledgement. Taken alone, Plaintiff's allegations of persuasion might not plausibly suggest that Paulk Jr. did anything more than "call[] upon" law enforcement. See Dye, 174 Fed. Appx. at 482-83. However, Plaintiff's additional allegations of influence and acknowledgement nudge Plaintiff's contention that Paulk Jr. "reached an understanding" with government officials across the line

---

[6] The original complaint did not include this allegation. See (Dkt. No. 1).

from conceivable to plausible.  See Bell Atlantic, 550 U.S. at 570; Rowe, 279 F.3d at 1283.  The amended complaint is therefore sufficient.

**CONCLUSION**

Because the Amended Complaint "state[s] a claim to relief that is plausible on its face," see Bell Atlantic, 550 U.S. at 570, the Court **DENIES** Paulk Jr.'s motion to dismiss.  (Dkt. No. 128).

**SO ORDERED**, this  25th  day of August, 2009.

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA